## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **Dr. Brie Gindele and Wendy Wilson, on Behalf of Themselves and All Others Similarly Situated** | **Case No.** |
| **Plaintiffs,** | **JUDGE** |
| | **CLASS ACTION COMPLAINT** |
| **v.** | **Jury Demand** |
| **DEAN FOODS, INC. and WHITEWAVE FOODS, INC.** | |
| **Defendant.** | |

Plaintiffs, Dr. Brie Gindele and Wendy Wilson, by and through the undersigned attorneys, bring this Class Action Complaint on behalf of themselves and other similarly situated persons against Defendants Dean Foods, Inc. and WhiteWave Foods, Inc. (collectively "Defendants").

### NATURE OF THE ACTION

1.     This action involves Defendants' false and misleading advertising in the marketing and sale of Horizon brand Organic Milk with DHA Omega-3. More specifically, Defendants have unlawfully marketed and sold Horizon Organic Milk with DHA Omega-3 to Plaintiffs and other members of the putative class through scientifically unsubstantiated health benefit claims that their products support and benefit brain health and development in children and adults.

2.     Defendants are corporations doing business in the food and beverage industry. Defendants produce branded dairy, soy and plant-based beverages and foods, and sell many

of these products under the brand name of Horizon Organic ("Horizon").  Having founded the Horizon brand in 1991, Defendants boast Horizon as America's "number-one organic dairy brand" and the first brand to supply organic milk nationwide, including four forms of Horizon Organic Milk with DHA Omega-3.

3.      Among its products, the Horizon brand has historically marketed and sold four forms of organic milk: whole milk, reduced fat milk, fat-free milk, and low fat chocolate milk.

4.      In an effort to better its market position and sales, Defendants in 2007 began including an additive of DHA Omega-3 nutrient in their organic milk formulations, falsely claiming that the nutrient provided added support for brain health and development, as well as other health benefits.

5.      Indeed, while continuing to market and sell both variations of all four forms of organic milk, those with and without the DHA Omega-3 additive, Defendants have charged and continue to charge consumers a price premium for the Horizon milk purportedly containing the additional DHA nutrient.

## THE PARTIES

6.      At all times relevant to this matter, Plaintiff, Dr. Brie Gindele, resided and continues to reside in Fort Myers, Lee County, Florida.

7.      At all times relevant to this matter, Plaintiff, Wendy Wilson, resided and continues to reside in the Tampa Bay area, including Tampa and Valrico, Hillsborough County, Florida.

8.      Defendant Dean Foods, Inc. ("Dean Foods") is a corporation licensed under the laws of the State of Delaware, with its principal place of business and headquarters at 2711

North Haskell Avenue, Suite 3400, Dallas, Texas 75204.

9.      Dean Foods is a company doing business in the food and beverage industry within the United States, including in Florida, that produces branded dairy and soy foods and beverages, including milk, creamers, and other cultured products. The company markets and sells under more than 50 local and regional dairy brands, as well as through private labels.

10.     Defendant WhiteWave Foods, Inc. ("WhiteWave Foods"), a wholly-owned subsidiary of Defendant Dean Foods, is organized and existing under the laws of the State of Delaware, with its headquarters at 12002 Airport Way, Broomfield, Colorado 80021. WhiteWave Foods produces and sells an array of branded dairy, soy and plant-based beverages and foods, throughout the United States, including in Florida, and sells many of these products under the brand name of Horizon Organic.

11.     At all relevant times, Defendants were each acting within the scope and course of their authority and with the permission and consent of the other Defendant. Defendants engaged in the misconduct alleged herein for the purpose of enriching themselves at the expense of Plaintiffs and the Class.

## JURISDICTION AND VENUE

12.     Plaintiffs restate each and every paragraph of this Complaint as if fully rewritten herein.

13.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000 and is a class action in which members of the Class are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

-3-

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because Defendants:

a.      are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District;

b.      do substantial business in this District; and

c.      are subject to personal jurisdiction in this District.

### FACTUAL ALLEGATIONS

15.     By way of history, DHA belongs to a category of fatty acids known as Omega-3's. It is a structural fat found in the brain and retina, and accounts for a significant percentage of the omega-3 fats found in the brain.

16.     Scientists and researchers have for many years questioned and studied whether DHA and DHA supplements consumed in the diet may better support brain function and development, as well as providing other health benefits.

17.     To date, scientific research has yielded no reasonable correlation to substantiate a link between DHA supplementation and improved brain health, function or development in children and adults.

18.     Based upon this lack of confirming science, the Federal Trade Commission has been called upon to investigate false claims that DHA supplements provide added health benefits, including support for improved brain health, development and function.

19.     In 2004, the FTC examined Martek Biosciences Corporation ("Martek"), the company that manufactures and sells the DHA additive to Defendants for use in their organic milk, regarding claims that Martek made with respect to the DHA supplement and its ability

to support brain function in children and adults.

20.     The FTC authored a letter to Martek that year, stating that, "[t]he staff continues to have concerns about whether Martek possesses adequate substantiation to make the claims about the benefits of DHA . . . supplementation for eye and brain function in older children and adults."

21.     In 2010, the FTC Division of Advertising Practices again looked into claims regarding DHA supplements and purported support of brain health and development, investigating Northwest Natural Products ("Northwest") because of product claims that its vitamins improved and supported brain function via omega-3 additives.

22.     That year, the FTC again issued a warning letter to Northwest and several other companies, noting that the agency found it objectionable for the companies to claim that consuming their omega-3 supplemented products "improves, enhances or supports brain function, cognitive function, attention span, concentration, and mental focus in children."

23.     Despite the above FTC admonitions and lack of scientific substantiation, Defendants, via use of Martek's DHA Omega-3 supplements, reformulated and sub-branded its Horizon Organic Milk to contain DHA Omega-3 additives.  In so doing, Defendants prepared and implemented a widespread and calculated marketing campaign to sell their organic milk with the DHA Omega-3 additive at a significant price premium based upon claims of improved brain health benefits for children and adults, as more fully set forth below.

24.     Thus, beginning in 2007, Defendants began specifically advertising that their Organic Milk with DHA Omega-3 supported brain health and development.  Defendants, however, never possessed viable scientific support for these brain function claims.

25.     Instead, the scientific evidence does not substantiate any reasonable link between the use of DHA supplements and improved brain health or development in children and adults.

26.     Despite never possessing reasonable scientific substantiation, Defendants have consistently advertised and continue to advertise a claimed brain health and development benefit throughout their packaging, labeling, and advertising campaign for Horizon Organic Milk formulations with the DHA Omega-3 additive.

27.     Despite the fact that Defendants never possessed adequate scientific or clinical substantiation for their DHA brain benefit claims, the advertising and labeling for Horizon Organic Milk with DHA Omega-3 contained unlawful and deceptive statements and health claims that wrongfully caused Plaintiffs and other putative class members to purchase the supplemented milk at a significant price premium.

28.     Since 2007, Defendants have produced, marketed and sold Horizon Organic Milk with DHA Omega-3, and in so doing, promised that the product had an additive that supported brain health and development for consumers, including children and adults. Defendants consistently made these promises throughout various advertising media, including print and other advertising excerpts set forth in television, radio, in-store, and internet advertising, and expressly set forth on each milk carton that the product contained: "DHA Omega-3", with language immediately beneath stating, "Supports Brain Health". (See packaging and language from Horizon website, October 7, 2011, as set forth below).[1]

---

[1] http://www.horizondairy.com/everyday-nutrition/dha-omega-3 (last visited October 7, 2011).



29.    Defendants further attributed their alleged brain health benefit claims to the inclusion of DHA Omega-3 additive in their milk products, which they touted as a "valuable nutrient that helps support the brain . . . ", with scientists agreeing that, when consumed in the diet, would become available to support the brain, heart and eyes.[2]

---

[2] http://www.horizondairy.com/everyday-nutrition/dha-omega-3/ (last visited October 7, 2011).



# DHA: a nutritional boost for your family.

At Horizon®, we believe one of the best ways we can nurture healthy families is to fortify our organic milk with DHA — a valuable nutrient that helps support the brain, heart and eyes.

## What is DHA?

DHA belongs to a category of healthy fatty acids known as Omega-3's. It is a major structural fat in the brain and retina, accounting for up to 97% of the omega-3 fats in the brain and up to 93% of the omega-3 fats in the retina.[1] Scientists agree that DHA consumed in the diet can become available to support brain, eye and heart health.

According to Dr. Alan Greene, most American kids are not getting the optimal amount of DHA. The typical 3-year-old gets on average only about 19 mg of DHA a day, far less than the 150 mg that leading health authorities recommend.

30.    Beginning in 2007 and throughout the relevant time period, Defendants ran advertisements, posted displays on internet and other media, and packaged their Horizon Organic Milk with DHA Omega-3, setting forth express and consistent representations that the milk's DHA Omega-3 additive provided a brain health and development benefit to consumers , including children and adults, who bought the product throughout Florida (and across the country).

31.    One such website posting specifically set forth as follows:

-8-



---

32.    Consistent throughout its advertisements, website postings and labels, Defendants stated that the Horizon Organic Milk with DHA Omega-3 provided support for brain health and development.    The milk carton front stated "DHA Omega-3" with "Supports Brain Health" immediately beneath it.  Print advertisements proclaimed "[m]ilk with DHA Omega-3 isn't rocket science, but it is genius," and represented "DHA Omega-3, a nutrient which supports healthy brain development."  Another print ad stated the Horizon Organic Milk with DHA Omega-3 was a "smart move for growing brains."  Further, certain Defendants radio advertisements announced, "[k]ids are smart. Continue to help support their brain development with Horizon Organic DHA Omega-3 Milk."  Yet another television ad showed a child beating her grandfather at a chess game, and called the DHA supplemented milk a "smart move".[3]

---

[3]  http://www.youtube.com/watch?v=T1c1-6oppnI (last visited September 30, 2011).

33.     Defendants' message was clear that their product, DHA supplemented milk, was formulated to support brain health via promoting better cognitive development, namely supporting the ability of children to learn and process.

34.     Defendants not only displayed their claims directly on the product packaging and on their website, but also aired ads on Radio Disney, Disney Family Fun Magazine, Disney.com, kaboose.com, disneyfamily.com, and familyfun.com. They also placed print ads with the product claims in American Baby, Better Homes and Gardens, Everyday Food, Family Circle, Fitness, Martha Stewart Living, Scholastic Parent and Child, and Working Mother.

35.     In addition to the false and misleading claims on its website, Defendants also linked or posted videos to the Horizon site, featuring Dr. Alan Greene, a pediatrician who acknowledges the role and presence of DHA in the brain and in brain cellular function, but does not actually confirm an opinion that DHA supplements in foods better support brain health or function. The use of a physician endorsement, Dr. Greene's, was false and misleading in giving consumers a sense that the DHA additives were medically proven to provide the benefits touted by Defendants.

36.     Through all of the above-noted advertisements, Defendants consistently and expressly claimed that Horizon Organic Milk with DHA Omega-3 benefited brain health, development and cognition for consumers, including children and adults, and thereby misrepresented and falsely advertised the touted benefit of DHA Omega-3 milk for the purpose of causing consumers to buy their products at a significant premium as opposed to a less expensive milk, organic or otherwise, that did not contain the additive.

## DEFENDANTS' BRAIN BENEFIT CLAIMS
## ARE UNSUBSTANTIATED

37.     Scientific research has never substantiated Defendants' claims that DHA Omega-3 supplemented milk improves or supports brain health and cognitive development for product purchasers.

38.     Initially, as noted above, the FTC questioned Martek as early as 2004 about whether there was "adequate substantiation to make the claims about the benefits of DHA . . . supplementation for eye and brain function in older children and adults."

39.     The FTC found similar brain benefit claims objectionable in its warning letter to 11 different DHA-promoting companies in 2010.

40.     Despite the FTC warning letters questioning the touted brain health benefits of DHA, Defendants continued to brazenly assert that science supported their brain health benefit claims, and, in turn, their right to charge a premium on their organic milk products with the DHA Omega-3 additive.

41.     Defendants' Horizon website continued to set forth as follows: "Infants & Children:  DHA provides a **nutritional boost for children's growing minds** and bodies, supporting brain and eye development and function.[4]"

42.     In support of the above statement and claims on Horizon's website regarding DHA brain benefits, Defendants have cited only two references to substantiate their purported claims:

> a.  Uauy R., et al., *"Essential Fatty Acids in Visual and Brain Development"*, Lipids (2001); 36(9): 885-895; and

---

[4] *See generally* http://www.horizondairy.com.

b. Birch E., et al., *"Visual Acuity and Cognitive Outcomes at 4 Years of Ages in a Double-blinded, Randomized Trial of Long-chain Polyunsaturated Fatty-acid Supplemented Infant Formula"*, Early Human Development (2007) 83, 279-284.

43.     While the *Uauy* study cited above does recognize DHA as an essential element to neurodevelopment in humans, it discusses only that supplementing infant formula with DHA additives showed some visual function improvement in formula-fed infants. In other words, this study, while recognizing DHA as an essential nutrient to neurodevelopment, in no way set forth that DHA additives could be placed in food products to enhance brain health or development in either infants or children.

44.     While Defendants ignore and fail to publicize later Dr. Uauy sources, the professor specifically clarified the absence of a scientific link between DHA supplements and better mental development in children and infants. In fact, in 2009, prior to and during the time that Defendants promoted their brain cognition benefit claims for childhood use of DHA supplemented milk, Dr. Uauy expressly denied that science justified such claims stating:

> There is currently insufficient evidence to identify an effect of LCP's on learning, education or performance of school-aged children in industrialized countries. A recent controlled study in a well-nourished school-aged population using low dose n-3 LCP (88 mg DHA and 22 mg EPA) supplementation did not find a beneficial effect on learning ability in children [Osendarp et al., 2007]. Further research is required . . . [5]

45.     Dr. Uauy similarly spoke out again in 2010, this time disavowing the alleged scientific link between DHA supplements in formula and infant brain development.

---

[5] Uauy R., et al., *"Fat and Fatty Acid Requirements and Recommendations for Infants of 0-2 Years and Children of 2-18 Years,"* Annals of Nutrition & Metabolism (September 15, 2009), 55: 76-96.

Speaking in response to the European Union's consideration of DHA supplements and infant brain development, Dr. Uauy stated:

> The evidence for effectiveness of DHA addition to formula for term babies in terms of improved long-term mental development is weak at best . . . until stronger data are available I would opt for a view that the effects of DHA on mental development are not sufficiently documented to establish public health policy.[6]

46.     The second authority cited on Defendants' Horizon website, the 2007 *Birch* study, was a clinical trial. While this study found some statistical difference in the cognitive development of 4 year-olds who were given DHA supplemented formula as opposed a control group, the analysis looked at children who were given DHA supplemented formula as newborns, not children using DHA supplements anew in milk or other food products after the first year of life. The *Birch* study, a single clinical trial, therefore did not even support Defendants' advertising claims regarding DHA supplemented milk and its effect on brain health and cognitive development in children and beyond.

47.     Indeed, there are few, if any, scientific clinical trials to date that have evaluated DHA supplement use with children and beyond, and whether such intake improves cognition. However, Martek, the company that sells DHA oil to Defendants for inclusion in Horizon DHA supplemented milk, was involved in one such study that published its results in 2008.

48.     In evaluating DHA supplementation effects on cognitive development in children, the Martek sponsored researchers concluded that, for each cognitive test, "results

---

[6] *See* http://info.babymilkaction.org/update/update43page11 (quoting Dr. Uauy, London Sch. of Hygiene & Tropical Medicine, June 2010).

indicated that changes from baseline to end of treatment were not statistically significantly different between the [DHA] and the placebo group".[7]

49.     In other words, the company that supplies DHA to Defendants for use in the supplemented milk did not find that science supported claims that child intake of DHA supplements improved cognition when compared to children who did not take the supplements.

50.     Further, the overwhelming majority of similar studies done to date do not scientifically support that DHA supplements improve cognition in children.

51.     In fact, researchers of DHA supplements conducted two separate meta-analyses, where they looked at many clinical trials and studies on the issue with the goal of evaluating consistencies and inconsistencies in results.  The first of these meta-analysis studies, published in 2008 in the Cochrane Systems Database Review, looked at more than 12 scientific studies that were previously published.  After accumulating the findings, the authors of the overall meta-analysis concluded that:

> The results of most well conducted RCTS have not shown beneficial effects of LCPUFA supplementation of formula milk on the physical, visual and neurodevelopmental outcomes of infants born at term.[8]

52.     The second meta-analysis, published in 2010 in the Journal of Pediatric Gastroenterology and Nutrition, analyzed the results of yet another set of 4 different clinical trials regarding DHA supplements and their ability to boost brain development.  Again, supporting science for a beneficial link could not be established.

---

[7] Ryan AS, et al., *"Assessing the Effect of Docosahexaenoic Acid on Cognitive Functions in Healthy, Preschool Children: A Randomized, Placebo-Controlled, Double-Blind Study",* Clinical Pediatrics (2008), 47(4), 355-62.

[8] Simmer, K., et al., *"Longchain Polyunsaturated Fatty Acid Supplementation in Infants Born at Term",* Cochrane Database Systems Review (2008), Jan 23;(1): CD000376.

> The absence of any detectable benefit or disadvantage in Neurodevelopment assessed with BSID at the age of 18 months for all of the children or in any subgroup therefore provides evidence against beneficial effects of LCPUFA [DHA and ARA] supplementation of BSID at 18 months under the conditions of the clinical trials included here.[9]

53.     The two meta studies therefore combined and analyzed overall results of at least 16 clinical trials, and like the Martek study, concluded that DHA supplements could not be shown to benefit infant neurodevelopment and cognition. The meta-analysis studies also focused on clinical trials with infants, and there has been no such meta study regarding supplementation of older children.

54.     Defendants' misrepresentations are, therefore, entirely unsupported in science, in that the overwhelming majority of scientific analysis conducted on the subject, including those studies that Defendants cite to and the study of their own DHA oil vendor, do not support that DHA supplements improve brain health and development in children and older purchasers.

55.     The cumulative evidence thus shows that, rather than ensuring their marketing claims were supported with scientific proof, Defendants ignored the overwhelming scientific data on DHA supplements, and made their unsubstantiated, unlawful benefit claims for the purpose of mass marketing and selling DHA supplemented milk products in Florida, and across the country, at a significant price premium. Plaintiffs and other members of the putative class, believing Defendants' misrepresentations, purchased the allegedly fortified milk at the price premium, thereby suffering damages, as more fully set forth below.

---

[9] Beyerlein, A., et al., *"Infant Formula Supplementation With Long-chain Polyunsaturated Fatty Acids Has No Effect on Bayley Developmental Scores at 18 Months of Age-IPD Meta-analysis of 4 Large Clinical Trials"*, Journal of Pediatric Gastroenterology and Nutrition (2010), 50(1): 79-84.

## PLAINTIFFS' PURCHASE OF DEFENDANTS' PRODUCTS

56.    Plaintiffs, Dr. Brie Gindele and Wendy Wilson, bring this action on their own behalf and on behalf of the putative class members, seeking judgment and other relief as set forth below, as the result of Defendants' false advertising, knowing misrepresentations and other unlawful conduct.

### Dr. Brie Gindele

57.    Throughout 2010, Plaintiff, Dr. Brie Gindele, purchased and consumed, along with her family, Horizon Organic Milk with DHA Omega-3.   During this time period, Plaintiff regularly purchased this product at Publix supermarkets in Fort Myers, Florida.

58.    As a result of Defendants' misrepresentations that this product improved brain health, Plaintiff chose to purchase Horizon Organic Milk with DHA Omega-3, to the exclusion of other milk products.

59.    As a result of Defendants' misrepresentations that this product improved brain health, Plaintiff purchased the allegedly fortified milk at an increased price, as opposed to paying less money for other milk products, organic or otherwise, that did not contain the DHA additive.  Plaintiff has lost money and incurred damages as a result of Defendants' false and misleading advertising, packaging, labeling and unlawful conduct as more fully described herein.

60.    Before purchasing the Horizon Organic Milk with DHA Omega-3 additive, Plaintiff reviewed the packaging, expressly claiming that the milk "Supports Brain Health".

61.    Plaintiff also viewed Defendants' other advertisements, including internet and print advertising, with Defendants' unsubstantiated claims that Horizon Organic Milk with DHA Omega-3 improves brain health and development in children and adults.  Plaintiff also

read, on Defendants' website, false claims made by Defendants that science existed to support its claims that the product improves brain health.

62.     Unbeknownst to Plaintiff and putative class members, the DHA Omega-3 additive in Horizon Organic Milk has never been shown to support or improve brain health or development in children or adults, and Defendants has never disclosed to consumers the lack of any scientific or clinical substantiation for their DHA health benefit claims.

63.     Had Plaintiff known that Defendants had no scientific evidence to support their claims that Horizon Organic Milk with DHA Omega-3 supported brain health, Plaintiff would not have purchased the Product or would not have paid such a high price for the product.

**Wendy Wilson**

64.     From approximately 2007 through 2010, Plaintiff, Wendy Wilson, purchased and consumed, along with her family, Horizon Organic Milk with DHA Omega-3.  During this time period, Plaintiff regularly purchased this product at Publix and Wal-Mart supermarkets in the Tampa Bay, Florida area.

65.     As a result of Defendants' misrepresentations that this product improved brain health, Plaintiff chose to purchase Horizon Organic Milk with DHA Omega-3, to the exclusion of other milk products.

66.     As a result of Defendants' misrepresentations that this product improved brain health, Plaintiff purchased the allegedly fortified milk at an increased price, as opposed to paying less money for other milk products, organic or otherwise, that did not contain the DHA additive.  Plaintiff has lost money and incurred damages as a result of Defendants' false and misleading advertising, packaging, labeling and unlawful conduct as more fully

described herein.

67.     Before purchasing the Horizon Organic Milk with DHA Omega-3 additive, Plaintiff reviewed the packaging, expressly claiming that the milk "Supports Brain Health".

68.     Plaintiff also viewed Defendants' other advertisements, including print and television advertising, with Defendants' unsubstantiated claims that Horizon Organic Milk with DHA Omega-3 improves brain health and development in children and adults.

69.     Unbeknownst to Plaintiff and putative class members, the DHA Omega-3 additive in Horizon Organic Milk has never been shown to support or improve brain health or development in children or adults, and Defendants has never disclosed to consumers the lack of any scientific or clinical substantiation for their DHA health benefit claims.

70.     Had Plaintiff known that Defendants had no scientific evidence to support their claims that Horizon Organic Milk with DHA Omega-3 supported brain health, Plaintiff would not have purchased the Product or would not have paid such a high price for the product.

## CLASS ACTION ALLEGATIONS

71.     Pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit on behalf of themselves and the proposed Class consisting of:

> All Florida residents who purchased the Horizon Organic Milk with DHA Omega-3 from 2007 to the present date. Excluded from the Class are Defendants' officers, directors and employees and those who purchased the Horizon Organic Milk with DHA Omega-3 for the purpose of resale.

72.     *Numerosity.* The Class comprises thousands of consumers throughout Florida and is therefore so numerous that joinder of all members of the Class is impracticable.

73.     *Typicality.* Plaintiffs' claims are typical of the claims of the other Class

members because, among other things, Plaintiffs and all class members have been subjected to Defendants' uniform misconduct described herein and injured by the purchase of products that do not perform in the manner Defendants' represented. Plaintiffs and the Class have thus all overpaid for the Products.

74. ***Adequacy of Representation.*** Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent and experienced counsel in the prosecution of this type of litigation. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

75. ***Predominance of Common Questions of Law and Fact.*** There are questions of law and fact common to the Class. These common questions of law and fact predominate over any questions affecting only individual class members, and include, but are not limited to:

a. Whether Defendants had adequate substantiation for their "brain health benefit" claims prior to disseminating those claims to the consuming public;

b. Whether consumers paid a premium for Horizon Organic Milk with the DHA Omega-3 additive;

c. Whether Defendants' claims regarding the DHA supplemented milk products, discussed herein, are unfair or deceptive;

d. Whether Defendants' alleged conduct violates public policy;

e. Whether Defendants engaged in false or misleading advertising;

f. Whether Defendants' alleged deceptive conduct described herein was likely to deceive an objectively reasonable consumer;

g.   Whether Plaintiffs and the Class members who purchased the DHA supplemented milk products suffered monetary damages and, if so, what is the measure of said damages;

h.   Whether Plaintiffs and Class members are entitled to an award of punitive damages;

i.   Whether Defendants conduct constitutes a violation of the Florida Statute, Section 502.201, *et. seq.*;

j.   Whether Defendants' have been unjustly enriched; and

k.   Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

76.   ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

i.   Class Members number in the thousands and individual joinder is impracticable;

ii.   The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually;

iii.   Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale compared to the significant, but relatively small, damages suffered by individual Class Members;

iv.   Trial of Plaintiffs' and Class Members' claims is manageable, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured;

     v.  When the liability of Defendants has been adjudicated, claims of all members of the Class can be determined by the Court; and

    vi.  Without a class action, the Class Members will continue to suffer damages and Defendants' violations of law will proceed without remedy while they continue to retain and reap the proceeds of their wrongful conduct.

77.    Trial of Plaintiffs' and Class Members' claims is manageable, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.  Since the focus is on Defendants' conduct, the management of this class action will be relatively easy and in all likelihood will not require complicate sub-classes or other variables that make it difficult to manage the litigation.

78.    Defendants have acted on grounds generally applicable to the Class by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations, and inadequate disclosures, that misled Plaintiffs and members of the Class, thereby making injunctive or declaratory relief applicable with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
**(Deceptive and Unfair Trade Practices)**
**(Violation of Fla. Stat. 501.201 *et seq.*)**

79.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

80.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

81.    Plaintiffs and Class members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

82.    FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

83.    For the reasons discussed herein, Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.*   Defendants' affirmative misrepresentations, omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

84.    Defendants' actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, and misrepresented and omitted material facts regarding their DHA-fortified milk products, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

85.    Plaintiffs and the Class reserve the right to allege other violations of FDUPTA as Defendant's conduct is ongoing.

86.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiffs and the Class members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules,

in an amount to be proven at trial. In addition, Plaintiffs and the Class seek equitable relief and to enjoin Defendants on the terms that the Court considers reasonable.

87.     In addition, Plaintiffs seek reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

88.     Plaintiffs hereby incorporate by reference the allegations contained paragraphs 1-78 of this Complaint as though set forth fully herein.

89.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

90.     Plaintiffs and the Class have conferred a benefit upon Defendants by purchasing Horizon Organic Milk with DHA Omega-3 at a significant premium, as opposed to less expensive milk, organic or otherwise, that did not contain the additive.

91.     By their deceptive, misleading and unlawful conduct alleged herein, Defendants have unjustly received and retained a benefit at the expense of Plaintiffs and Class Members.

92.     Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as result of its deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiff and Class Members.

93.     Plaintiff and the Class have suffered financial loss as a direct result of Defendants' conduct.

94.     Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their deceptive, misleading and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants for themselves and the members of the Class as follows:

A.     Determining that the action is a proper class action and certifying an appropriate Plaintiffs class pursuant to Rule 23(a), (b)(2), and (b)(3).

B.     Awarding damages in an amount to be determined;

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed members of the Class;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and to pay them all monies acquired by Defendants by means of any act or practice declared by the Court to be wrongful

E.     Ordering Defendants to engage in a corrective advertising campaign;

F.     Awarding attorneys' fees and costs; and

G.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 17, 2011

Respectfully submitted,

**J. ANDREW MEYER, ESQUIRE**
Florida Bar No. 0056766
TAMRA GIVENS, ESQUIRE
Florida Bar No. 657638
RACHEL SOFFIN, ESQUIRE
Florida Bar No. 0018054

MORGAN & MORGAN, P.A.
201 North Franklin Street
7th Floor
Tampa, Florida  33602
Telephone:  (813) 223-5505
Facsimile:  (813) 223-5402
Email: ameyer@forthepeople.com
      tgivens@forthepeople.com
      rsoffin@forthepeople.com

**SCOTT WM WEINSTEIN, ESQUIRE**
Florida Bar No. 563080
MORGAN & MORGAN, P.A.
12800 University Drive, Suite 600
Fort Myers, FL  33907-5337
Telephone: (239) 433-6880
Facsimile:  (239) 433-6836
Email:  sweinstein@forthepeople.com

**FRANK E. PISCITELLI, JR.**
(Ohio Bar No. 0062128)
(To Be Admitted Pro Hac Vice)
**DAVID W. SKALL**
(Ohio Bar No. 0068740)
(To Be Admitted Pro Hac Vice)
PISCITELLI LAW FIRM
55 Public Square, Suite 1950
Cleveland, Ohio 44113
216.931.7000 Telephone
216.931.9925 Facsimile
Email: frank@feplaw.com
      davidskall@feplaw.com